**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COOKEVILLE DIVISION**

| | | |
|---|---|---|
| **CHAD E. VINCENT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **CASE NO. 2:09-00103** |
| **vs.** | ) | **JUDGE CAMPBELL/KNOWLES** |
| | ) | |
| | ) | |
| **W.B. MELTON, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**I.   Introduction and Background**

This matter is before the Court upon a Motion to Dismiss for failure to state a claim upon

which relief may be granted filed by sixteen of the twenty-two Defendants Plaintiff has sued in

this action.  The moving Defendants are: W.B. Melton, John McLeod, Overton County Sheriff's

Department, Overton County Tennessee, Marti Thomas[1], Judy Parrigin, Keith (l/n/u)[2], Judy

Harris, Lisa Copeland, Casie Harris[3], Aaron (l/n/u)[4], Chris Maynard, Brandon Grogan, Tonya

---

[1] Plaintiff incorrectly refers to this Defendant as Marti Thomas.  The record reflects that Defendant's correct name is Martha Thomas.  Docket No. 106, p. 1.

[2] While Plaintiff refers to this Defendant as "Sgt. Keith," the record reflects that this Defendant's full name is Keith Morrison.  Docket No. 106, p. 1.

[3] Plaintiff incorrectly refers to this Defendant as Casey Harris.  The record reflects that Defendant's correct name is Casie Harris.  Docket No. 106, p. 1.

[4] While Plaintiff does not provide the last name of this Defendant, the record reflects that this Defendant's correct name is Aaron Wright.  Docket No. 106, p. 1.

1

Yarbrough[5], (f/n/u) Randolph[6], and Jennifer Julian[7]. Docket No. 105. Defendants have contemporaneously filed a supporting Memorandum of Law. Docket No. 106.

Plaintiff has filed a "Motion in Opposition of Defendants' *__Motion to Dismiss__* or Motion for Extension of Time to File Additional Responsive Pleading and Incorporated Memorandum of Law," which the undersigned will construe as a Response. Docket No. 114 (italics and underlining original). Plaintiff has also filed an Addendum in Support of Motion in Opposition of Defendants' *Motion to Dismiss* or Motion for Extension of Time to File Additional Responsive Pleading and Incorporated Memorandum of Law, which the Court will construe as an addendum to Plaintiff's Response. Docket No. 125 (italics in original).

Plaintiff filed this *pro se*, in forma pauperis action, pursuant to 42. U.S.C. § 1983, alleging various violations of his civil rights related to his incarceration in the Overton County Jail ("Jail"). Docket No. 1. Plaintiff sues Defendants W.B. Melton, John McLeod, Overton County Sheriff's Department, Overton County Tennessee, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casey Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarborough, and William Randolph in their official and individual capacities.[8]

---

[5] Plaintiff incorrectly refers to this Defendant as Tonya Yarborough. The record reflects that Defendant's correct name is Tonya Yarbrough. Docket No. 106, p. 1.

[6] While Plaintiff refers to this Defendant as "CPL Randolph," this Defendant's correct name is William Randolph. Docket No. 106, p. 1.

[7] At different points in Defendant's Memorandum, Defendant fluctuates between spelling Defendant's last name "Julian" and "Jullian." Docket No. 106, pp. 1, 2. These discrepancies, however, are not material to the issues before this Court.

[8] For purposes of this Report and Recommendation, the Court will only discuss Defendants who are parties to the instant Motion to Dismiss. In addition to the instant Defendants, Plaintiff has also sued [f/n/u] Beaty, Southern Health Partners, Debbie Deck, Nancy Weatherford, the U.S. Marshal Service, and the City of Livingston. *See* Docket No. 1. Judge

2

*Id.* Because Plaintiff does not indicate in his Complaint whether he is suing Defendant Jennifer Julian in her official or individual capacity, he is deemed to be suing her in her official capacity only.[9]

In Plaintiff's original Complaint, Plaintiff seeks injunctive relief "tailored to remedy all rights violations and violations of law," appointment of counsel,[10] "nominal" damages, attorneys fees, "reasonable" compensatory damages, punitive damages, declaratory orders, the "decertification of the O.C.J. until violations are corrected," an order stating all issues "are preserved until [his] release," "the right to AMEND this complaint as necessary upon release or as additional violations become apparent," and transport orders to move him to a facility "which will treat him equal to or better than convicted inmates since he is a federal pre-trial detainee." Docket No. 1, p. 5.50.

In Plaintiff's first Amended Complaint, Plaintiff seeks the additional relief of "Nominal Damages of $500.00 per alleged rights violation, joint and several, all defendants"; "Compensatory damages of $125,000.00, joint and several, all defendants"; and, "Punitive damages in the amount of $250,000.00, joint and several, or at the % liability deemed

---

Campbell has previously entered an Order dismissing Plaintiff's claims against the U.S. Marshal Service. Docket No. 123. The undersigned has submitted a Report and Recommendation, recommending that a Motion for Summary Judgment filed by the City of Livingston be granted. Docket No. 132.

[9] When a plaintiff does not specify the capacity in which he sues a defendant, the Court is to presume that the defendant is being sued in his or her official capacity. *See Wells v. Brown*, 891 F.2d 591, 592-594 (6th Cir. 1989) (plaintiffs, including pro se prisoners, are required to specify in their §1983 actions that they are suing state defendants in their individual capacities for damages; if a plaintiff does not specify the capacity in which a defendant is sued, the Court presumes that the defendant is being sued in his official capacity).

[10] Plaintiff subsequently filed a Motion for the Appointment of Counsel (Docket No. 8), which was denied (Docket Nos. 9, 13).

3

appropriate by the court." Docket No. 16.

Defendants filed the instant Motion and accompanying Memorandum on January 29, 2010. Docket Nos. 105-106. Defendant Overton County Sheriff's Department argues that Plaintiff's Complaint fails to state a claim against it because Overton County Sheriff's Department is a department of Overton County and is therefore not a separate legal entity amenable to being sued under 42 US.C. § 1983. Docket Entry No. 106, p. 7. Defendants W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casey Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarborough, William Randolph, and Jennifer Julian, all employees of the Overton County Sheriff's Office, argue that Plaintiff's Complaint fails to state a claim against them because: (1) §1983 does not impose *respondeat superior* liability; (2) Plaintiff has failed to state a claim against Defendants Keith Morrison, Casey Harris, Chris Maynard, William Randolph, and Jennifer Julian because he fails to allege that these Defendants personally violated his constitutional rights; (3) Plaintiff has failed to state a claim against Defendant Judy Parringin because his only allegation against her is that she told him that he had to follow the Jail rules, which does not violate Plaintiff's constitutional rights; (4) Plaintiff's allegations that Defendants Copeland and Harris delivered his incoming legal mail already opened lack specificity[11]; (5) Plaintiff has not alleged specific violations of his constitutional rights by Defendant Melton; (6) Plaintiff is not entitled to injunctive or declaratory relief because he is no longer an inmate at the Jail; (7) Inmates do not

---

[11] Defendants do not address the allegations included in Plaintiff's Amended Complaint accusing Defendants Tonya Yarbrough and/or Jennifer Julian of opening Plaintiff's mail from the public defender's office, nor do they address any of the other arguments Plaintiff raises in his Amended Complaint. *See* Docket No. 106 and Attachments to Docket No. 42.

4

have a constitutional right to an effective grievance system; (8) Plaintiff has alleged no injury as a result of the alleged denial of a law library, filing materials, or access to the courts; (9) Inmates do not have a constitutional right to hold trustee status; (10) Plaintiff failed to allege a serious medical condition and can therefore not satisfy the objective component of an Eighth Amendment denial of medical treatment claim; (11) the Jail has a legitimate interest in limiting the amount and types of materials allowed in inmates cells; (12) Plaintiff is not entitled to be treated any differently than the other Jail inmates because of his status as a federal pretrial detainee; (13) Plaintiff failed to establish a violation of his freedom of religion; (14) Plaintiff did not allege that any individual Defendants were deliberately indifferent to the conditions of his confinement; (15) Defendants are entitled to qualified immunity in their individual capacities; and (16) there can be no vicarious liability against Overton County because Plaintiff has suffered no underlying constitutional harm caused by the individual Defendants. Docket Entry No. 106.

Plaintiff's initial Response (Docket No. 114), is essentially a string of quotes from various cases. Inasmuch as the undersigned can discern, Plaintiff quotes the various passages to argue that: (1) the Due Process Clause of the Fourteenth Amendment prohibits the "punishment" of federal pretrial detainees; (2) having to sleep on the floor violates his Eighth and Fourteenth Amendment rights; (3) indigent inmates must be provided with paper and pen to draft legal documents and with stamps to mail them; (4) prisoners must be provided an attorney to render legal assistance if they are denied reasonable access to the law library; (5) opening an inmate's legal mail outside his presence violates his constitutional rights; (6) conditions of confinement that cause pain, discomfort, or threaten good health are serious and actionable, even if there is no permanent injury; and (7) deliberate indifference can be established by intentionally attempting

5

to delay access to health care treatment, by a complete denial of treatment, or by reckless or callous indifference to the safety of a prisoner. *Id.*

Plaintiff's "Addendum" to his Response (Docket No. 125), maintains that Defendants enacted internal policies, rules, and/or regulations in reaction to his lawsuit prohibiting "inmate-to-inmate" correspondence by mail. *Id.* Specifically, Plaintiff asserts that Defendants refused to deliver "legal" mail addressed to fellow inmate Kevin Dee Clark on or about February 26, 2010, because it was marked from Plaintiff at the Morgan County Correctional Complex. *Id.* Plaintiff attached a photocopy of the outside of this "legal" mail envelope to his Addendum, and noted that this envelope contained unsigned Affidavits (to be notarized) of inmates Kevin Dee Clark and Johnny Lin Cantrell, who were "eyewitnesses who support Plaintiff's claims." *Id.* Plaintiff argues that this envelope was marked "LEGAL MAIL ONLY," and should have been opened only in the presence of inmate Clark, as the addressee. *Id.* Plaintiff further asserts that, since he is a *pro se* litigant, this mail was "privileged legal mail" and "should be afforded the same safeguards as those sent by other members of the bar." *Id.* Plaintiff concludes his Addendum by again requesting the appointment of counsel, requesting an injunction preventing Defendants from "interfering in any way" with the delivery of legal documents from the Plaintiff to eyewitnesses who remain incarcerated within the Jail, requesting notification if further memoranda are needed to rule on the issues now before the Court, and requesting being held to the "'less stringent' standards of a *pro se* litigant. *Id.*

For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

## II.  Facts[12]

Plaintiff, an inmate in federal custody since October 11, 2007, was transferred to "federal holding" at the Overton County Jail ("Jail") on February 26, 2009.  Docket No. 1, p. 5.1.  Plaintiff alleges that his constitutional rights were violated while he was in the Jail.  *Id.*  While Plaintiff does explicitly identify all of the Amendments he alleges were violated, his various constitutional claims fall under the First, Fifth, Eighth, and Fourteenth Amendments.

Plaintiff states that the Jail does not provide inmates with "rules or regulations whatsoever by which [inmates] are expected to conduct [themselves]," but will "arbitrarily enforce[] and/or change[] these 'unwritten' rules without notice to the inmates."  *Id.*  Plaintiff states that he has, via "request" and "grievance," asked on "many" occasions for copies of the rules to be made available to him so that he can know what is expected of him, but that he has been told that he is not entitled to such copies.  *Id.*  Plaintiff complains that the Jail does not have any established disciplinary board policy or procedure, and that there are no inmate advisors available.  *Id.* at 5.11.

Plaintiff also states that, although the Jail has a "Grievance Form" available for inmates to complete, grievances are ignored.  *Id.* at p. 5.2.  Plaintiff states that the Jail does not answer grievances or provide copies of filed grievances.  *Id.*  Plaintiff further states that the Jail does not offer any type of grievance appeal.  *Id.*  Plaintiff argues that the failure to provide copies of filed grievances or any type of grievance appeal process limits his access to claims where he must prove that he has exhausted internal and state remedies as prerequisites to filing a federal

---

[12] The following facts pertain only to the Defendants who are parties to the instant Motion, and, unless otherwise noted, are derived from Plaintiff's Complaint.

7

lawsuit.  *Id.*

Plaintiff asserts that, "on numerous occasions," he asked "the Jailer" to confirm and/or deny the existence of any detainers filed against him, but that, citing security concerns, "the Jailer" refused to release any information to him, in violation of his right to know pursuant to the "Interstate Agreement on Detainers Act."  *Id.* at p. 5.20.

Plaintiff argues that because of his status as a federal pretrial detainee, he should be treated "at least as good as convicted inmates within the BOP."  *Id.* at p. 5.6.  Plaintiff explains:

> In the BOP, personal property is limited by cubic feet in relation to cell volume due to fire codes.  In the TDOC, a 2-man cell, each inmate is allowed 6 ft 3 of personal property - 12 ft 3 per cell. Here I'm told I'm only allowed (2) Bibles and (2) Books "per policy" and due to "fire loads" [*sic*].  The cells are equal to or larger than the (2) man cells in prison.  They have the same type of sprinkler/fire suppression systems installed.  Therefore, I feel the regulation of (2) Bibles and (2) Books is unreasonable and the assertion of "fire loads" as the reason for a security concern is absurdly frivolous.
>
> Specifically, I was allowed to amass several books, bibles, bible studies, etc. in my cell.  I was not told of any limits, rules, policy, etc. which limited these quantities.  I had less than 6 ft 3 total and feel I was well within fire loads.  Then, on a whim, there was a shakedown on September 7, 2009, during which every book/bible I had was taken without notice.  I wasn't given a receipt for property taken.  The items taken were not contraband, as they had been introduced into the facility via US mail and approved before delivery.  The items were taken and/or destroyed without due process....
>
> I feel the actions of Sept 7, 2009, have violated my right to freedom of religion....I had (5) versions of the Holy Bible in my cell before the shakedown.  After the search, I had two (2): A King James and a New King James Version.  Taken were my NIV, NASB, and HCSB translations.  For whomever searched my cell, took three of five Bibles and <u>themselves chose which to leave me</u>, I feel this forced <u>their</u> religious preferences on me and thereby violated my rights to religious freedom. ... To limit the religious

8

materials I can have also is to limit my religious freedom.

I do not believe this jail can limit me to (2) Bibles and take all my other religious study aids without showing a reasonable and articulatable [*sic*] security concern.

*Id.* at pp. 5.6-5.9.  Plaintiff also argues that his freedom of religion has been curtailed because no religious services have been allowed at the Jail since September 25, 2009.  *Id.* at p. 5.43.

Plaintiff argues that, as an indigent inmate, he has been denied sufficient office supplies to draft and file any court pleading because he is provided only two envelopes, two stamps, and two pieces of blank paper.  *Id.* at p. 5.3.  Plaintiff asserts that he is not given anything to write or type with, and therefore has no way to file a court pleading.  *Id.*  Plaintiff avers that his filing of the case at bar was "effectively silenced ... for 5+ months," because he had to "borrow or hustle up" writing supplies, postage, and envelopes.  *Id.*  Plaintiff alleges that the Jail's provision of only two envelopes, two stamps, and two pieces of paper to indigent inmates unconstitutionally restricted his access to the courts.  *Id.* at pp. 5.3, 5.28.  Plaintiff complains that he is indigent and yet the Jail "refuses to pay postage to mail this complaint."  *Id.* at p. 5.44.

Plaintiff alleges that he does not have access to the specific names and badge numbers of some of the Defendants, further impeding his ability to properly prepare and file his lawsuit.  *Id.* at p. 5.29.  Plaintiff next argues that the Jail law library does not contain any federal law books, further hindering his ability to properly file suit in federal court.  *Id.* at p. 5.12.  Plaintiff alleges that had to buy some federal materials "from the streets" in order to sufficiently research his "§ 1983 issues."  *Id.* at pp. 5.13, 5.15.  Plaintiff argues that he should not be "held liable for the procedural nuances of proper filing of a § 1983 suit," when he did not have access to federal law materials in the Jail.  *Id.* at p. 5.26.

9

In his Amended Complaint, he specifically alleges that Defendant Martha Thomas refused to allow him access to state law library books from February 26, 2009, to June/July 2009, leading to his complaints going "stale."[13]  Docket No. 42, p. 1-1.  Plaintiff also argues that he was left with no access to the courts when Defendant McLeod was on extended medical leave from September 21, 2009 through October 12, 2009, because Defendant McLeod was the only person who could approve "legal copies."  Docket No. 1 at p. 5.38.

Plaintiff also argues that he was threatened by Defendants John McLeod, Thomas, Grogan, and Yarbrough in regard to filing this lawsuit, with Defendant McLeod specifically noting that [Sheriff] "Melton's Law" would supersede any other law.  *Id.* at pp. 5.4, 5.10, 5.22  Plaintiff believes that he was being retaliated against for filing this suit and for assisting other inmates with their legal needs ("jailhouse lawyering").  *Id.*  He also mentions several instances that he believes demonstrate that other inmates were not experiencing the same level of punishment or same level of restrictions that he was, including the confiscation of his radio, the confiscation of his books and bibles, a denial of supplies needed to file his Complaint, receiving the wrong medication on two occasions, and being denied kitchen trustee status.  *Id.* at pp. 5.17, 5.18, 5.27, 5.28, 5.37, 5.47.

Plaintiff also avers that his "specially marked" legal incoming mail, delivered by Defendants Judy Harris and Lisa Copeland, was opened outside of "the addressee's" presence on "ten or more" occasions, including September 1 and 2, 2009.  *Id.* at pp. 5.4-5.5.  Plaintiff does not specifically accuse Defendants Copeland and Harris of opening his mail, but simply notes

---

[13] On December 7, 2009, Plaintiff filed an Amended Complaint, containing three pages of new allegations.  Docket No. 42.

that they delivered his mail.  *See id.* at p. 5.5.  In his Amended Complaint, Plaintiff accuses Defendants Jennifer Julian and/or Judy Parrigin of delivering his already opened legal mail from the Sevier County Clerk and "DHS" on November 7, 2009.  Docket No. 42, p. 1-1.  Plaintiff also accuses Defendants Jennifer Julian and/or Tonya Yarbrough of opening his legal mail from the Public Defender's Office on November 14, 2009.  *Id.* at p. 1-2.

Plaintiff avers that all calls placed from the Jail are recorded and monitored, including calls with his attorney.  Docket No. 1 at p. 5.24.  Plaintiff argues that the recording and monitoring of his "confidential" calls violates his attorney-client privilege.  *Id.*  Plaintiff contends that people at the Jail have asked him details of his federal suit, which he asserts they would not know unless they listened to his phone conversations or read his mail.  *Id.*

Plaintiff avers that, an unidentified "Jailer," citing security reasons, has instituted an unwritten policy which states that nothing printed on ink jet printers or from the internet can be received by mail.  *Id.* at p. 5.17.  Plaintiff also avers that the Jail has banned all newspapers, magazines, catalogues, and bulk-rate non-subscription mail.  *Id.* at p. 5.19.

Plaintiff additionally argues that John McLeod has limited the subject matter of "educational books" Plaintiff can have by "stating vague and unspecific 'security' concerns," thus restricting his ability to complete academic correspondence courses and take advantage of courses which are of a "rehabilitative nature."  *Id.* at pp. 5.13, 5.21.  Plaintiff contends that the limitations on educational materials directly effects the number of "certificates of completion" he can earn and present at his sentencing and parole review, in violation of his rights as a federal pretrial detainee.  *Id.* at p. 5.34.

Plaintiff argues that he has attempted to "repair fraudulent items" on his credit record, but

that Defendant McLeod has denied him proof of incarceration as well as proof of identity on a notarized form to submit with his credit bureau requests. *Id.* at p. 5.14. Plaintiff avers that this refusal to provide him with proof if his identity and incarceration has "delayed or prevented [his] access to these provisions of the 'Fair Credit Reporting Act' while incarcerated to remedy the effects of having ben the victim of identity theft." *Id.* Plaintiff further avers that this refusal violates "TN Open Record" laws that accord him access to public records related to his incarceration. *Id.* at pp. 5.14-5.15.

Plaintiff also cites several hygienic problems he has witnessed or experienced at the Jail. He argues that the Jail does not supply enough hygienic materials or medication to the inmates, resulting in problems such as staph infections. *Id.* at pp. 5.15, 5.20, 5.39. Specifically, Plaintiff argues that, "on many occasions" the Jail has gone "up to two (2) weeks without passing toilet paper." *Id.* at p. 5.15. Plaintiff avers that the inmates "constantly run out and have to resort to less-than-hygienic methods of cleaning ourselves." *Id.* Plaintiff also argues that his hygiene supplies were taken and destroyed without due process during a "shakedown" on September 7, 2009, thereby forcing him to replace them at an additional cost to himself. *Id.* at p. 5.16. Plaintiff contends that there was a "massive MRSA staph outbreak" in the Jail because "rockmen" are not given the proper cleaning and disinfecting supplies. *Id.* at p. 5.20. Plaintiff avers that he has had staph twice. *Id.* at p. 5.21.

Plaintiff further avers that, on September 17, 2009, the hot water boilers broke at the Jail and were not fixed until September 26, leading to "unsanitary conditions" because inmates did not have warm showers for ten days and the laundry and dishes were washed in cold water. *Id.* at p. 5.38. He additionally avers that his cell has had leaky plumbing which has resulted in

12

"prolonged exposure to black mold and an unknown health risk to me." *Id.* at p. 5.46. Plaintiff

also complains that his cell toilet has been broken since July 31, 2009, forcing him to use a

community toilet. *Id.* at pp. 5.42-5.43. Plaintiff avers that he was denied access to a working

toilet during the September 25, 2009 "lockdown," because the toilet in his cell was broken and

he could not use a community toilet, leading to unsanitary conditions in his cell, namely, an

overflowing toilet. *Id.*

Plaintiff contends that, on September 26, 2009, he and many other inmates were forced

to be outside in the recreation yard "in downpouring rain" for approximately one hour and

seventeen minutes while "a shakedown was conducted." *Id.* at p. 5.43.

Plaintiff alleges that, on September 28, 2009, some sprinkler heads were broken, which

flooded the pod. *Id.* at p. 5.43. Plaintiff avers that he was left in his cell, in the water, for six to

eight hours. *Id.* Plaintiff contends that he was required to clean up the flooded mess in his cell

by himself, which he equates to involuntary servitude. *Id.* at p. 5.44.

In his Amended Complaint, Plaintiff contends that Defendant Melton and other Jail

employees consistently used tobacco products while at the Jail, placing Plaintiff "in danger due

to exposure to Environmental Tobacco Smoke and smokeless tobacco products while

incarcerated and during numerous federal transports." Docket No. 42, p. 1-1.

Plaintiff alleges that there are no visible fire evacuation routes marked in the Jail. *Id.* at

p. 5.25. Plaintiff complains that there have not been any fire drills since he has been transferred

to the Jail. *Id.* In his Amended Complaint, Plaintiff further alleges that a "Bolt" was placed on

the outside of the recreation yard door, thus cutting off access to the fire escape route from the

"max pod." Docket No. 42 at p. 1-2.

13

Plaintiff complains that, for several months, all the door locks in the "max" pod were broken and inmates were allowed to "run wild 24/7," thereby creating an insecure environment which lead to an assault upon him in July of 2009. *Id.* at p. 5.27. Plaintiff argues that he is "entitled to more protection" because he is a federal pretrial detainee. *Id.*

Plaintiff also alleges problems with access to both eye and dental care. *Id.* at pp. 5.26, 5.28, 5.30, 5.31, 5.36. Plaintiff contends that "standard preventative maintenance should be done periodically." *Id.* at p. 26. Plaintiff complains that "Miss Debbie" (allegedly a nurse at the Jail) denied him "reasonable treatment," "force[d him] to accept scratched glasses that [he] just paid $300 for," delayed or denied him dental treatment such that his dental problems were exacerbated, or "disrespect or harass" him for asserting his rights. *Id.* at p. 5.31. Plaintiff avers that the wrong medication was given to him on two occasions (*Id.* at p. 5.37), and that medications are only distributed twice per day, regardless of the physician's instructions (*Id.* at p. 5.39). Plaintiff also avers that the Jail has discontinued his "Phenergan 50 mg twice daily" despite it being ordered by his liver specialist. *Id.* at p. 5.40. Plaintiff additionally complains that his "indigent account should not be charged anything [for his medical care] which the feds have paid for already." *Id.* at p. 5.31.

Plaintiff complains that the Jail "seizes 100% of all money that is deposited into an inmate account against outstanding indigent balances," when the "BOP policy allows for only (½) to be taken; the other (½) should be allowed to be spent on commissary." *Id.* at p. 5.34.

Plaintiff contends that the lockdowns and his other complaints amount to punishment, in violation of his rights as a pretrial detainee. *Id.* at p. 5.45. Plaintiff further argues that, in general, as a federal pre-trial detainee, he should be given the same amount of rights as a federal

14

inmate, and should not be treated like the state inmates he is housed with at the Jail. *Id.* at pp. 5.36, 5.45, 5.46. Plaintiff also argues that he should not be summarily classified as "max" because he is losing two bonus good behavior credits per month off his ten year state sentence as a result of "this errant Jail classification policy." *Id.* at p. 5.45. Plaintiff contends that the Jail does not follow the statutory mandatory good time credit scheme set forth in the Tennessee Code Annotated, thereby violating his rights. *Id.* at p. 5.46.

Plaintiff argues that he is also not allowed to be a kitchen trustee just because he has Hepatitis C (which Plaintiff refers to as "HCV"), thus violating his Equal Protection rights. *Id.* at pp. 5.39-5.40. Plaintiff later argues that he is not allowed to be a trustee because of his federal pretrial detainee status. *Id.* at p. 5.47.

Plaintiff next alleges that his personal information was "on display" to other inmates from February 26, 2009, to July 2009, as his "face sheet" was attached to a "med cart" that fifty to sixty inmates had access to at some point during the day. *Id.* at p. 5.41. Plaintiff alleges that, as a result of being able to see this "face sheet," the other inmates discovered that Plaintiff had Hepatitis C, was a federal detainee, and was a material witness against a co-defendant in his pending federal case. *Id.* Plaintiff alleges that after discovering this information, other inmates assaulted him in July 2009, resulting in his receiving a black eye, bloody nose, and "busted lip." *Id.*

Plaintiff also argues that he was also forced to sleep on the floor on a mat from February 26, 2009, to August 7, 2009 because of overcrowding, which was "cruel and unusual punishment." *Id.* at pp. 5.34-5.35. Plaintiff avers that at times, two men cells housed up to four inmates, while six men cells housed as many as ten inmates, in violation of fire codes. *Id.* at p.

15

5.35.

Plaintiff contends that, from February 26, 2009, to mid-June 2009, the Jail served two meals per day on the weekends, in violation to his right to three meals per day. *Id.* at pp. 5.41-5.42. Plaintiff argues that, from October 11, 2007, to September 26, 2009, he lost a total of 83 pounds while in the custody of the US Marshals Service as a result of the "inadequate diet[s]" provided by their facilities. *Id.* at pp. 5.42. Plaintiff avers that his "extreme" weight loss is cruel and unusual punishment. *Id.*

Plaintiff argues that the Jail does not have enough uniforms for all of its inmates. *Id.* at p. 5.49. Plaintiff contends that "one in five wasn't issued a complete uniform." *Id.*

Plaintiff avers that Jail employees write "incident reports" into the "WINSOMS" computer system without notifying the inmates or providing a way for the inmates to challenge or appeal the content of the "incident reports," in violation of his due process rights. *Id.* at p. 5.33. Plaintiff further avers that the content of the incident reports are used to reduce or deny good time credit, become part of the inmate's institutional file, and are reviewed by the parole board during parole hearings. *Id.*

Plaintiff was transferred to the Putnam County Jail on December 22, 2009. Docket No. 71.

### III.  Analysis

### A.  Standard of Review:  Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material

elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

17

Finally, while pro se complaints are to be construed liberally (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), that liberality does not allow a court to conjure up unpled facts. *McFadden v. Lucas*, 713 F.2d 143, 147 n.4 (5th Cir. 1983); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077 (1978).

## B.  42 U.S.C. § 1983

Plaintiff alleges violations of his First, Fifth, Eighth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983.  *See* Docket Entry No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-2255 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

18

**1. Official Capacity Claims**

As has been noted, Plaintiff sues Overton County, the Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, William Randolph, and Jennifer Julian in their official capacities. Docket No. 1. Defendant W.B. Melton is the Sheriff of Overton County, while Defendants John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, William Randolph, and Jennifer Julian are employees of the Overton County Sheriff's Department. *Id.*

With regard to Plaintiff's official capacity claims against Defendants, in complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id.* In order for the public entity to be subject to liability under § 1983, the plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-388 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he/ she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was

caused by an official policy, custom, or usage of the local governmental entity.).

Inasmuch as Plaintiff brings the instant § 1983 claim against Defendants in their official capacities, Defendants stand in the shoes of the entity they represent (*see Claybrook*, 199 F.3d at 355 n.4), which is Overton County. Plaintiff's claims, therefore, must be evaluated under the foregoing standards of liability. *City of Canton*, 489 U.S. at 387-388. Thus, in order to withstand this aspect of Defendants' Motion to Dismiss, Plaintiff must allege facts that show or imply the existence of a constitutionally deficient Overton County official policy or custom that caused him injury. *Id.*

Although Plaintiff argues many things, Plaintiff has not specifically alleged any facts relating to an actual official policy or custom of Overton County that caused him constitutional injury. Accordingly, Plaintiff has failed to state a viable claim against Defendants in their official capacities.

## 2.  Individual Capacity Claims

Plaintiff also sues Defendants Overton County, the Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph in their individual capacities.[14]  *See* Docket No. 1.

Plaintiff argues that Overton County is responsible for the actions of the Overton County Sheriff's Department, which is responsible for the operation of the Jail and the actions of all its

_____

[14] As has been discussed, Defendant Julian is sued in her official capacity only. *See Wells*, 891 F.2d at 592-594.

employees and third-party medical suppliers.[15]  *Id*. at p. 5.32.

With regard to Plaintiff's claims against Defendants in their individual capacities, § 1983 does not permit the imposition of liability based upon *respondeat superior*.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).  *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).  In order for Defendants to be held liable in their individual capacities, therefore, Plaintiff must demonstrate that each Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights.  *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted).  *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.)  Conclusory allegations are not enough.  *See Street,* 886 F.2d at 1479.  *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).  Plaintiff must establish a "causal connection between the misconduct complained of and the official sued."  *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

### a. Grievances

Plaintiff alleges that, although the Jail has a "Grievance Form" available to inmates,

---

[15] Plaintiff also argues that the US Marshals Service and/or the Bureau of Prisons are responsible because he is being housed on their behalf at a facility that "does not meet federal standards and is in violation of [his] constitutional rights and/or federal law."  *Id.* at p. 5.32. Because the US Marshals Service and/or the Bureau of Prisons are not parties to the instant Motion, the undersigned will not further discuss Plaintiff's allegations against them.

21

submitted grievances are ignored, and there is no grievance appeal process. Docket No. 1 pp. 5.2, 5.10, 5.11, 5.33, 5.41. The filing (and denial) of a complaint or grievance, however, is insufficient to impose § 1983 liability upon supervisory personnel. *Henry v. Pogats*, 35 F.3d 565 (6th Cir. 1994). *See also Poe v. Haydon,* 853. F.2d 418 (6th Cir. 1988); *Bellamy*, 729 F.2d at 421. Moreover, there is no constitutional right to a grievance procedure or grievance appeal process. *See, e.g., Walker vs. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6ᵗʰ Cir. 2005); *Young v. Gundy*, F. App'x 568, 569-570 (6ᵗʰ Cir. 2002). Additionally, Plaintiff is not required to show that he has exhausted any grievance procedures prior to bringing a § 1983 action. *Jones v. Bock*, 549 U.S. 199 (2007). Significantly, Plaintiff does not specifically allege that any of the named Defendants personally ignored his grievances, but instead makes a general statement that grievances are ignored. *See, e.g., Id.* at p. 5.2. Because Plaintiff has not alleged any facts to support his claims that these individual Defendants "at least implicitly authorized, approved, or knowingly acquiesced" to the "ignoring" of grievances, Defendants cannot be held personally liable for this claim.

**b. Denial of Access to the Courts**

Plaintiff also argues that he was denied access to the courts by, 1) not being provided copies of his filed grievances or having a grievance appeals process to properly demonstrate that he has exhausted his administrative remedies; 2) being denied sufficient stationary supplies in order to draft and file documents with the Court; 3) the Jail's refusal to pay for postage to mail his Complaint; 4) not having access to the specific names and badge numbers of all Defendants; 5) not having federal law materials in the Jail law library, such that he had to buy federal law materials "from the streets"; 6) Defendant Martha Thomas denying him access to state law

materials in the Jail law library; and 7) not having anyone to approve legal copies when Defendant McLeod was on extended medical leave. Docket No. 1, pp. 5.3, 5.12, 5.13, 5.15, 5.26, 5.28, 5.29, 5.38, 5.44; *see also* Docket No. 42, p. 1-1.

As an initial matter, while Plaintiff alleges generally that he was denied access to the courts by all of the above-listed means, with the exception of Plaintiff's allegations against Defendants Thomas and McLeod, which will be discussed in greater detail below, Plaintiff fails to allege which Defendants personally engaged in conduct that denied him access to the courts. As has been discussed, in order for Defendants to be held liable in their individual capacities, Plaintiff must demonstrate that each Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell* 867 F.2d at 959; *Bellamy,* 729 F.2d at 421 (*citing Hays,* 668 F. 2d at 872-874). Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479; *Anderson,* 477 U.S. at 257; *Nix,* 160 F.3d at 347; *Lujan,* 497 U.S. at 888; *McDonald,* 898 F.2d at 1162. Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn,* 697 F.2d at 128. Because Plaintiff has failed to allege that Defendants (other than Defendants Thomas and McLeod) personally condoned, encouraged, or participated in denying him access to the courts, Plaintiff cannot impose individual liability on Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph for this claim.

Morever, the Supreme Court has established that a mere allegation that conditions at a prison library have impeded a prisoner's access to the courts is not enough to establish a

23

successful constitutional claim. Instead,

> . . .the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

*Lewis v. Casey*, 518 U.S. 343, 351 (1996).

In the instant case, the record is replete with Motions, letters, memoranda, and other documents filed by Plaintiff, clearly indicating that Plaintiff has not been denied access to the courts. *See, e.g.,* Docket Nos. 1, 7, 8, 12, 16, 17. Furthermore, Plaintiff's Responses to the instant Motion to Dismiss show that Plaintiff has been able to extensively research case law to support his claims. *See* Docket Nos. 114, 125. Plaintiff's filings have been timely, thereby demonstrating that he has not suffered any legal ramifications from his alleged impeded access to the courts.

As noted above, the only specific allegations that Plaintiff raises in his denial of access to the courts claim are that Defendant John McLeod impeded Plaintiff's access to the courts by going on medical leave for a month, leaving Plaintiff with no one who could approve "legal copies," and that Defendant Martha Thomas denied Plaintiff access to state law library books from February 26, 2009 to June/July 2009. Docket No. 1, p. 5.38; Docket No. 42, p. 1-1. Defendant McLeod's one-month medical leave absence from the Jail and Defendant Thomas' alleged denial of access to state law library books do not amount to an actionable harm, as Plaintiff was able to research and file his pleadings in a timely manner. The statute of limitations

24

did not run on Plaintiff's claims. Plaintiff did not have a claim denied or excluded for being untimely. Defendants John McLeod and Martha Thomas cannot be held personally liable for denying Plaintiff access to the courts when he has been able to pursue his claims.

## c. Retaliation/Threats

Plaintiff alleges that Defendants John McLeod, Thomas, Grogan, and Yarbrough threatened and/or retaliated against him by punishing him more severely and not treating him the same as some of the other inmates because he filed this suit and aided other inmates in their filing of their own complaints. Docket No. 1, pp. 5.17, 5.18, 5.27, 5.28, 5.37, 5.47. While Plaintiff does not identify which Defendants allegedly performed which retaliatory acts, Plaintiff specifically avers that retaliatory actions included the taking of his radio; the taking of several of his books and bibles; the denial of materials needed to file his Complaint; being given incorrect medication on two occasions; and being denied kitchen trustee status. *Id.* at 5.17, 5.18, 5.21, 5.22, 5.27, 5.28, 5.37, 5.47. Plaintiff additionally argues that Defendant McLeod threatened Plaintiff by telling Plaintiff he was subject to "Melton's Law," which superseded all other types of law. *Id.* at pp. 5.4, 5.10, 5.22.

Although Plaintiff alleges that his radio, books, and bibles were taken during a "shakedown," and that he was denied kitchen trustee status, Plaintiff does not specifically aver which Defendant was the person who took his belongings or denied him kitchen trustee status. Because Plaintiff has not alleged facts establishing a "causal connection between the misconduct complained of and the official sued" (*Dunn,* 697 F.2d at 128), Defendants cannot be held individually liable for this claim.

Additionally, as was discussed above, Plaintiff's allegations that he was denied sufficient

materials to file his Complaint lacked specificity with regard to which Defendants personally denied him materials. Moreover, the alleged lack of sufficient materials did not preclude Plaintiff's legal filings, nor did they delay said filings to Plaintiff's legal detriment. Accordingly, Plaintiff cannot hold Defendants individually liable for this claim.[16]

With regard to Plaintiff's allegation that Defendant McLeod "threatened" him by telling him that he was subject to "Melton's Law," Plaintiff fails to explain what being "subject to 'Melton's Law'" entailed; *i.e.*, what actions/inactions were threatened to be taken, etc. Moreover, "a threat by a jail or prison officer is not per se unconstitutional because the plaintiff has no protectable right not to have threats made against him." *Proctor v. Applegate,* 661 F.Supp.2d 743, 775 (E.D. Mich. 2009), *quoting Snyder v. Bradley Co. Justice Center,* 2008 WL 2357645, *6 (E.D. Tenn. 2008), *citing Williams v. Gobles,* 2000 WL 571936, at *1 (6th Cir.2000)(neither verbal harassment nor threats constitute punishment within the context of the Eighth Amendment); *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989) (federal right must be actually denied, not merely threatened); *Ivey v. Wilson,* 832 F.2d 950, 954-55 (6th Cir.1987)(explaining that verbal abuse is not cognizable under § 1983). Because Plaintiff does not have a protectable right not to have threats made against him, Plaintiff cannot demonstrate that Defendant McLeod, via his statement, personally condoned, encouraged, or participated in conduct that allegedly violated Plaintiff's rights.

**d. Opening of Legal Mail**

Plaintiff contends that Defendants Lisa Copeland and Judy Harris delivered Plaintiff's

---

[16] As Defendant Nurse Debbie Deck is not a party to this instant Motion to Dismiss, the Court will not address whether her actions in giving Plaintiff the wrong medication on two occasions rise to the level of individual liability on this claim.

"specially marked" privileged legal mail to him already opened outside of "the addressee's" presence on "ten or more" occasions in September 2009. Docket No. 1, pp. 5.4, 5.5. Plaintiff does not specifically accuse Defendants Copeland and Harris of opening his mail, rather, Plaintiff complains that Defendants Copeland and Harris *delivered* his mail already opened. *Id.* In Plaintiff's Amended Complaint, Plaintiff also alleges that Defendants Jennifer Julian and/or Judy Parrigin likewise delivered his already opened legal mail from the Sevier County Clerk and "DHS" on November 7, 2009, and that Defendants Jennifer Julian and/or Tonya Yarbrough opened legal mail from the Public Defender's office to Plaintiff on November 14, 2009. Docket No. 42, pp. 1-1, 1-2.

The Sixth Circuit has ruled that prison officials do not have "unfettered" access to read and open all prisoners' mail, and that officials should not open "correspondence that impacts upon or has import for a prisoner's legal rights, the attorney-client privilege, or the right to access to courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003).

With regard to Plaintiff's allegations against Defendants Copeland and Harris that they delivered his "specially marked" privileged legal mail to him already opened, *delivering* opened legal mail does not amount to a violation of Plaintiff's constitutional rights. Plaintiff cannot sustain his claim by simply implying that Defendants Copeland and Harris were the people who opened his legal mail prior to delivering it.

Plaintiff's allegations that Defendants Jennifer Julian and/or Judy Parrigin also delivered his already opened legal mail from the Sevier County Clerk and "DHS" likewise fail to state a cognizable claim for the reasons just discussed. Moreover, Plaintiff's individual capacity allegations against Defendant Julian fail because Plaintiff has sued her only in her official

27

capacity.

With regard to Plaintiff's allegations that Defendants Jennifer Julian and/or Tonya Yarbrough opened his legal mail from the Public Defender's office on November 14, 2009, as has been discussed, Defendant Julian cannot be held liable in her individual capacity because Plaintiff has only sued her in her official capacity. With regard to Plaintiff's allegation against Defendant Yarbrough, Plaintiff's assertion that his mail was "legal mail" is a legal conclusion that the Court does not have to accept. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Plaintiff has not alleged any facts to support an argument that Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Keith Morrison, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, and William Randolph "at least implicitly authorized, approved, or knowingly acquiesced" to anything pertaining to Plaintiff's claims regarding his legal mail. Accordingly, they cannot be held personally liable for this claim.

**e. Monitoring and Recording Confidential Phone Conversations**

Plaintiff also avers that confidential phone conversations with his attorney were monitored and recorded because "people" at the Jail have asked him details of his federal suit, which Plaintiff asserts they could not know unless they listened to his phone conversations or read his mail. Docket No. 1, p. 5.24. A prisoner's right to attorney-client privilege extends to phone calls. *Bounds v. Smith*, 430 U.S. 817, 822 (1997); *see also*, *Walen v. Sprint*, 2007 WL 2870176 at *2 (E.D. Mich. 2007), *citing Green v. Federal Detention Center, Philadelphia*, 2007 WL 44012 at *2 (E.D. Pa. 2007). In the case at bar, however, Plaintiff conclusorily states that

28

the phone conversations with his attorney must have been recorded because "people" have asked him details about his federal case, and they could not have known those details unless they listened to his phone conversations or read his mail. Plaintiff does not aver which Defendants may have either recorded his confidential phone calls or somehow disseminated information gained from monitoring and/or recording those confidential phone calls to the "people" in the Jail who asked Plaintiff details of his federal suit. As has been discussed, conclusory allegations are insufficient to establish individual liability.

Because Plaintiff has failed to allege personal involvement by Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph, Plaintiff cannot sustain individual capacity claims against them.

### f. Freedom of Religion

Plaintiff argues that his religious freedom was violated when all but two of his bibles and two of his books were taken from his cell during a "shakedown" on September 7, 2009.[17] Docket No. 1, pp. 5.6, 5.7, 5.8, 5.9, 5.19. Plaintiff does not specify which guards raided his cell or took his bibles and books. *See id.* Plaintiff alleges that he has become interested in the study of God, and that before the shakedown, he had five different versions of the bible in his cell, along with numerous other books and bible study materials. *Id.* at pp. 5.8-5.9. Plaintiff argues

---

[17] Plaintiff avers in one paragraph that, during the September 7, 2009 "shakedown," *every* book and bible he had was taken without notice. Docket No. 1, p. 5.7. Throughout the remainder of Plaintiff's Complaint, however, Plaintiff avers that he was permitted to keep two books and two bibles, but that all books and bibles in excess of those were taken. *See, Id.* at pp. 5.6, 5.7, 5.8, 5.9, 5.19.

that, by removing his bible study materials and deciding which two versions of the bibles Plaintiff was allowed to keep and which would be confiscated, the guards who raided his cell forced their religious beliefs upon Plaintiff, resulting in a violation of Plaintiff's religious freedom. *Id.*

The Supreme Court has held that "reasonable opportunities must be afforded to all prisoners to exercise their religious freedoms guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 (1972). The Supreme Court has also held, however, that prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).

While Plaintiff complains that his bibles and books were taken, Plaintiff fails to mention specifically which prison guards took his bibles and books. Because Plaintiff does not specifically aver that any of the instant Defendants personally condoned, authorized, or knowingly acquiesced to the "shakedown" procedure which allegedly deprived him of his additional bibles and books, Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph cannot be held personally liable for Plaintiff's claim.

Moreover, Jail officials in the case at bar limited the number of books an inmate could have in his cell at any given time in order to promote fire safety by decreasing "fire loads." *See* Docket No. 1 at pp. 5.6. While Plaintiff complains that this limitation is "frivolous," establishing this policy is within the authority of Jail employees in order to maintain institutional safety.

30

Plaintiff also avers that his freedom of religion has been curtailed by the lack of religious services in the jail since September 25, 2009. *Id.* at p. 5.43. Again, while Plaintiff makes a general averment, he fails to identify which Defendant either prohibited or failed to schedule religious services in the Jail since September 25, 2009. Without such an averment, Plaintiff cannot hold Defendants liable in their individual capacities.

**g. Educational Materials Restriction**

Plaintiff avers that, citing "security concerns," Defendant McLeod instituted a limitation on "educational books" that Plaintiff could have in his cell. *Id.* at p. 5.13, 5.21. Plaintiff also avers that an unidentified "Jailer," citing security concerns, instituted an unwritten policy that prohibits the receiving of mailed materials printed on ink jet printers or printed from the internet. *Id.* at p. 5.17. Plaintiff additionally avers that the Jail has banned all newspapers, magazines, catalogues, and bulk-rate non-subscription mail. *Id.* at p. 5.19. Plaintiff further avers that during the September 7, 2009 "shakedown," unnamed prison guards took academic materials from Plaintiff's cell, based on the "2 Bibles, 2 books" rule. *Id.* at p. 5.13, 5.21. Plaintiff alleges that these restrictions infringe on his ability to complete academic correspondence courses "of a rehabilitative nature" and earn "certificates of completion" that he can present at his sentencing and parole review. *Id.*

Plaintiff has not cited any provision of the Constitution or federal law that would entitle him to have educational materials in his cell. Moreover, as has been discussed above, Jail officials are given wide-ranging deference in the execution of policies that maintain institutional safety and security. *Bell*, 441 U.S. at 545. In the case at bar, these restrictions were implemented due to "security concerns" and as a means of reducing "fire loads." *See* Docket

31

No. 1 at pp. 5.6. These policies are reasonably related to the legitimate prison interests of maintaining safety and security, and reducing the risk of fire. *See Blevins v. Smith*, 911 F.2d 731 (6th Cir. 1990) (in which the Court found that reducing the amount of newspaper in a prison cell was a reasonable means to prevent the risk of fire). Although Plaintiff avers that these restrictions impede his ability to complete correspondence courses "of a rehabilitative nature" and earn "certificates of completion" that he can present at his sentencing and parole review, Plaintiff does not have a constitutional right to earn or receive sentence credits (*Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992); Tenn. Code Ann. § 41-21-236(a)(2)), nor does Plaintiff have a constitutional right to parole (*Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979); *Wright v. Trammell*, 810 F.2d 589, 591(6th Cir. 1987). Thus, Plaintiff cannot establish that his constitutional rights were violated.

Additionally, other than complaining that Defendant McLeod, citing security concerns, instituted a limitation on "educational books" in his cell, Plaintiff fails to cite any specific Defendants who personally condoned, participated, or encouraged in the events he avers violated his rights. Accordingly, Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph cannot be held personally liable. As Plaintiff conceeded, Defendant McLeod cited valid rationales reasonably related to the legitimate prison interests of maintaining safety and security, and reducing the risk of fire. Accordingly, he did not violate Plaintiff's rights and cannot be held liable in his individual capacity.

**h. Access to Personal Information**

Plaintiff avers that, as a result of Defendant McLeod's not giving him notarized proof of his identity, his incarceration, and his address, Plaintiff was unable to submit the necessary documentation to credit bureaus so that he could repair fraudulent items on his credit record. Docket No. 1. at p. 5.14. Plaintiff alleges that this violates the "Fair Credit Reporting Act," which he contends requires jails to provide inmates with proof of incarceration and address as well as proof of identity. *Id.* Plaintiff also avers that Defendant McLeod's refusal to give him the documentation needed to repair his credit report violates his rights under the "TN Open Record" laws. Docket No. 1, pp. 5.14-5.15.

While prisoners may have a constitutional right to access to certain documents, such as privileged legal mail, the undersigned has been unable to find any legal support for Plaintiff's contention that he has a constitutional or federal statutory right to have Defendant McLeod provide documentation needed to repair his credit record. *See Sallier*, 343 F.3d at 874. Plaintiff's vague reference to the "TN Open Record" laws does not establish that he has any rights under those laws in the circumstances present. Moreover, Plaintiff cannot state a claim under § 1983 for the alleged violation of a state law.

Even if Plaintiff could somehow establish that he had a right to be provided the necessary documentation for him to repair his credit score, prison officials are granted qualified immunity when performing discretionary functions that do not clearly violate a constitutional or statutory right of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. The right of a prisoner to personal information in order to repair his credit score does not fall under a clear statutory or constitutional right, and Plaintiff would be unable to impose individual liability upon Defendant McLeod.

33

Because Plaintiff has not alleged any facts to support an argument that the remainder of the instant Defendants "at least implicitly authorized, approved, or knowingly acquiesced" to anything pertaining to Plaintiff's claims, Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph cannot be held personally liable for this claim.

Plaintiff also avers that, he asked "the Jailer," "on numerous occasions," whether there were any detainers filed against him, but that, citing security concerns, "the Jailer" refused to release any information to him. Docket No. 1, p. 5.20. Plaintiff argues that "the Jailer's" refusal to release information to him violates his right to know pursuant to the "Interstate Agreement on Detainers Act." *Id.*

Once again, Plaintiff does not specifically identify who "the Jailer" is. Because Plaintiff fails to specifically allege that one of the instant Defendants was the "the Jailer," Plaintiff cannot hold them individually liable.

Because Plaintiff cannot establish either that his federal rights have been violated, or that a causal nexus exists between the instant Defendants and the conduct Plaintiff avers violated his rights, Plaintiff cannot sustain this individual capacity claim against any of the instant Defendants.

Plaintiff additionally complains that his personal information was "on display" to other inmates from February 2009 to July 2009 when his "face sheet" was attached to a "med cart" that fifty to sixty inmates had access to at some point during the day. Docket No. 1, p. 5.41. Plaintiff alleges that he was assaulted by other inmates after they discovered, via the information

34

on his "face sheet," that he had Hepatitis C, was a federal detainee, and was a material witness against a co-defendant in his pending federal case. *Id.*

Again, Plaintiff fails to identify which of the instant Defendants, if any, attached his "face sheet" to the "med cart." Moreover, Plaintiff has failed to cite any authority for the proposition that he has a constitutional right not to have his "face sheet" attached to a "med cart." Without such a constitutional or federal statutory right, and without a causal nexus, Plaintiff cannot impose individual liability upon the instant Defendants.

**I. Various Eighth Amendment Claims**

Plaintiff raises a variety of claims relating to his conditions of confinement at the Jail. Plaintiff argues that the Jail does not supply enough hygienic materials or medication to the inmates, resulting in problems such as staph infections. Docket No. 1 at pp. 5.15, 5.20, 5.38, 5.39. Plaintiff also complains that "on many occasions" the Jail has gone "up to two (2) weeks without passing toilet paper" (*Id.* at p. 5.15) and that "rockmen" are not given the proper cleaning and disinfecting supplies (*Id.* at p. 5.20).

Plaintiff additionally complains that the hot water boilers broke and inmates lacked access to warm water for ten days, resulting in less than sanitary conditions since the laundry and dishes were washed in cold water; that his cell has had leaky plumbing, leading to "black mold" in his cell; that his cell toilet has been broken since July 31, 2009, such that he has had to use a community toilet; that his cell toilet overflowed when he was denied access to a community toilet and had to use his broken toilet; and that some sprinkler heads were broken, which flooded the pod, but that Plaintiff was left in his cell, in the water, for six to eight hours before being made to clean up the excess water in his cell. *Id.* at pp. 5.42-5.44, 5.46.

Plaintiff further argues that one in five Jail inmates was not issued a complete uniform because the Jail does not have enough uniforms for all of its inmates, and that, because of Jail overcrowding, Plaintiff was forced to sleep on a mat on the floor from February 26, 2009 to August 7, 2009. *Id.* at pp. 5.34, 5.35, 5.49. Plaintiff avers that, at times, two men cells housed up to four inmates, while six men cells house as many as ten inmates. *Id.* at p. 5.35.

Plaintiff argues that the Jail did not seem to obey fire codes, leading to unsafe conditions in the jail. *Id.* at pp. 5.25. Specifically, Plaintiff argues that there are no visible fire evacuation routes marked in the Jail, there have been no fire drills since his transfer to the Jail, the cells are unsafely overcrowded, and that a "bolt" was placed on the outside of the recreation yard door that prevented access to the fire escape route from the "max pod." *Id.*; Docket No. 42, p. 1-2.

Plaintiff complains that, for several months, all the door locks in the "max" pod were broken such that inmates were allowed to "run wild 24/7," thereby creating an insecure environment which lead to an assault upon him. Docket No. 1., p. 5.27.

Plaintiff avers in his Amended Complaint that Jail employees consistently used tobacco products while at the Jail, thereby exposing Plaintiff to "Environmental Tobacco Smoke" and smokeless tobacco products. Docket No. 42, pp. 1-1.

Plaintiff further alleges that, on September 26, 2009, himself and many other inmates were forced to be outside in the recreation yard "in downpouring rain" for approximately one hour and seventeen minutes while "a shakedown was conducted." Docket No. 1, p. 5.43.

Plaintiff also contends that, from February 26, 2009 to mid-June 2009, the Jail served only two meals per day on the weekends, and that he has lost a total of eighty-three pounds while in the custody of the US Marshals Service as a result of the "inadequate diet" provided by their

facilities**.** *Id.* at pp. 5.41-5.42.

As can be seen, although Plaintiff asserts numerous Eighth Amendment claims, they are all general Jail condition allegations. Plaintiff does not aver that any of the instant Defendants personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. Moreover, Plaintiff does not allege that any of the instant Defendants knew of and deliberately disregarded the allegedly unsafe or inhumane conditions in the Jail. Plaintiff, therefore, cannot hold the instant Defendants liable in their individual capacities.

**j.  Medical Needs Neglected**

Related to Plaintiff's other Eighth Amendment arguments, Plaintiff avers that "Miss Debbie" (apparently a Nurse at the Jail who is not a party to the instant Motion) delayed or denied him access to eye and dental care, "force[d him to accept scratched glasses that [he] just paid $300 for," gave him the wrong medication on two occasions, only distributed medication twice daily regardless of the prescribing physician's orders, and discontinued his Phenergan against the orders of his liver specialist. Docket No. 1. at pp. 5.26, 5.28, 5.30, 5.31, 5.36, 5.37, 5.40.   As an initial matter, Plaintiff's denial of medical care claims are asserted against "Miss Debbie," who is not a party to the instant Motion. Plaintiff does not allege that any of the individual Defendants who are a party to this Motion "at least implicitly authorized, approved, or knowingly acquiesced" to anything pertaining to Plaintiff's claims. Accordingly, Defendants Overton county, Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph cannot be held personally liable.

**k. Federal Pretrial Detainee Status**

Plaintiff also avers that, as a federal pretrial detainee, he should be treated differently than the state inmates at the Jail and should be given at least the same amount of rights as a federal inmate would have in a federal institution. Docket No. 1. at pp. 5.27, 5.36, 5.45, 5.46. Specifically, Plaintiff complains that the Jail "seizes 100% of all money that is deposited into an inmate account against outstanding indigent balances," when the "BOP policy allows for only (½) to be taken; the other (½) should be allowed to be spent on commissary." *Id.* at p. 5.34. As another example, Plaintiff complains that, "In the BOP, personal property is limited by cubic feet in relation to cell volume," and "in the TDOC, a 2-man cell, each inmate is allowed 6 ft 3 of personal property," but the Jail limits inmates to less.

Plaintiff does not argue that it is a violation of his rights to be housed in the Jail, but rather, contends that it is a violation of his rights to be treated like all the other Jail inmates. Plaintiff argues that the lockdowns and his other complaints amount to punishment, in violation of his rights as a pretrial detainee. *Id.* at p. 5.45. Plaintiff also argues that he is "entitled to more protection" because his is a federal pretrial detainee. *Id.* at p. 5.27.

As an initial matter, it should be noted that the day-to-day operations of a jail contractor's facilities are in the contractor's hands, and not the federal government's hands. *Logue v. United States*, 412 U.S. 521, 529 (1973). Additionally, Plaintiff has not provided, nor has this Court found, any authority to support the contention that federal pretrial detainees, simply by virtue of their status as such, have a constitutional right to different or better treatment than their fellow county or state jail inmates.

Because Plaintiff not have a constitutional right to be treated differently or better than the

38

other inmates at the Jail, there is no underlying constitutional violation, and the instant Defendants cannot be held liable in their individual capacities.

## l. Trustee Status

Plaintiff argues that his Equal Protection rights were violated when he was denied kitchen trustee status as a result of his having Hepatitis C. Docket No. 1. at pp. 5.39, 5.40. Plaintiff also argues that his Equal Protection rights were violated when he was denied trustee status because he was a federal pretrial detainee. *Id.* at p. 5.47.

There is no constitutional right to the position of prison trustee. *Inmates, Washington County Jail v. England*, 516 F.Supp. 132, 141 (D.C. Tenn. 1980). Appointment and removal of inmates as trustees is up to the "sound discretion of jail administrators." *Id.*

Because Plaintiff does not have a constitutional right to be a trustee (in the kitchen or otherwise), Defendants could not have violated that right. Accordingly, Plaintiff's individual capacity claim against Defendants Overton County, Overton County Sheriff's Department, W.B. Melton, John McLeod, Martha Thomas, Judy Parrigin, Keith Morrison, Judy Harris, Lisa Copeland, Casie Harris, Aaron Wright, Chris Maynard, Brandon Grogan, Tonya Yarbrough, and William Randolph fail.

## m. Due Process Claims

Plaintiff raises numerous complaints that he avers violates his Due Process rights. Plaintiff complains that the Jail does not provide inmates with "rules or regulations whatsoever by which [inmates] are expected to conduct [themselves]," "but then will "arbitrarily enforce[] and/or change[] these 'unwritten rules without notice to the inmates." Docket No. 1, p. 5.1. Plaintiff additionally complains that the Jail does not have any established disciplinary board

policy or procedure, nor does it have any inmate advisors available.  *Id.* at p. 5.11.

Plaintiff further complains that his books, bibles, and other printed materials were confiscated and destroyed.  *Id.* at p. 5.7.  Plaintiff avers that he was not given an inventory listing of the property that was taken from him, nor did he have a venue to appeal to try to get his belongings back.  *Id.*  Plaintiff also argues that his hygiene supplies were taken and destroyed, thereby forcing him to replace them at an additional cost to himself.  *Id.* at p. 5.16.

Plaintiff avers that Jail employees write "incident reports" into the "WINSOMS" computer system without notifying the inmates or providing a way for the inmates to challenge or appeal the content of the "incident reports."  *Id*. at p. 5.33.  Plaintiff contends that the content of the incident reports are used to reduce or deny good time credit, become part of the inmate's institutional file, and are reviewed by the parole board during parole hearings.  *Id.*

Plaintiff argues that he should not be summarily classified as "max" because that classification loses him two bonus good behavior credits per month.  *Id.* at p. 5.45.

As can be seen, although Plaintiff asserts numerous Due Process claims, they are general allegations.  Plaintiff does not aver that any of the instant Defendants personally condoned, encouraged, or participated in the conduct that allegedly violated his rights.  Plaintiff, therefore, cannot hold the instant Defendants liable in their individual capacities.

### n.  Injunctive Relief

Plaintiff seeks, *inter alia*, injunctive relief.  Docket No. 1.  Plaintiff's claims for injunctive relief are moot because Plaintiff is no longer incarcerated at the Jail, as he was transferred to the Putnam County Jail on December 22, 2009.  *See* Docket No. 71; *Kensu v. Haigh*, 87 F. 3d 172, 175 (6th Cir. 1996).

40

## IV.  Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss (Docket No. 105) be GRANTED.[18]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

---

[18] If the submitted Report and Recommendation recommending that the City of Livingston's Motion for Summary Judgment be granted is accepted (Docket. No. 132), and the instant Report and Recommendation is accepted, the only remaining Defendants will be [f/n/u] Beaty, Southern Health Partners, Debbie Deck, and Nancy Weatherford.

41